UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 20-cr-00017 |
| vs. | ) |
| BRANDON PAUL KIRSTEIN, | ) **SENTENCING MEMORANDUM** |
| Defendant. | ) |

COMES NOW Defendant Brandon Paul Kirstein, by and through his attorneys Andrea D. Jaeger and Eric D. Tindal of Keegan, Tindal, & Jaeger, and for his Sentencing Memorandum addressing the factors to be considered in imposing Defendant's sentence under 18 U.S.C. § 3553(a), states as follows:

### A. OBJECTIONS TO THE PSR AND GUIDELINES ISSUES

1. Defendant's objections to the PSR have been resolved, with the exception of Defendant's request for variance based upon policy matters, discussed below.

2. As noted by the Government's sentencing memorandum, the parties have agreed to the following advisory guidelines:

> Base offense level 30
> Weapon +2
> Obstruction of justice +2
> Acceptance of Responsibility -3
> Total offense level 31
> Criminal history category III
> Advisory Guideline range 135–168

*Obstruction of justice and acceptance of responsibility*

3. Defendant agrees this case presents the "extraordinary case" in which both obstruction and acceptance of responsibility can co-exist. Rather than willful obstruction with serious commentary with a clear and real design and intent, the alleged conversations at issue here are examples of inartful commentary, blustering, and misguided statements of frustration. Although Defendant disagrees with all claimed statements alleged by the Government's witnesses[1] and disagrees any such commentary was ever a serious solicitation, Defendant does agree obstructive conduct varies widely in "nature, degree of planning and seriousness," USSG § 3C1.1 app. note 3, and the Guidelines and applicable case law may support application of the enhancement here. *See, e.g.*, *id.* at app. note 4 and 4(A); *U.S. v. Collins*, 754 F.3d 626, 629 (8th Cir. 2014) (district court has broad discretion to apply enhancement to a wide range of conduct); *U.S. v. Carrillo*, 380 F.3d 411, 415 (8th Cir. 2004) (even unsuccessful attempts to intimidate or threaten is sufficient for enhancement); *U.S. v. Wahlstrom*, 588 F.3d 538, 544 (8th Cir. 2009) (conduct can vary widely in nature, degree of planning, and seriousness). Defendant further agrees his conduct in this matter may constitute obstruction, and he ultimately agrees application of the enhancement here is appropriate.

4. While not the sole consideration, it is worth noting Defendant did plead guilty to Count One within the Court's deadline to do so, and Defendant truthfully admitted responsibility for his wrongdoing. CM/ECF 30. As noted by application note 3 to USSG § 3E1.1:

> Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under §1B1.3 (Relevant Conduct)…will constitute

---

[1] It would be a strange solicitation, indeed, to solicit an attempted murder from individuals known to be themselves in custody and who will remain in custody for the foreseeable future, such they could not actually complete any such solicitation.

significant evidence of acceptance of responsibility for the purposes of subsection (a).

USSG § 3E1.1 n. 3. While application of an enhancement for obstruction of justice pursuant to § 3C1.1 may indicate acceptance of responsibility credit is not warranted, there is no *per se* prohibition upon applying both sections. Rather, as noted by application note 4 to § 3E1.1, both the enhancement pursuant to § 3C1.1 and the reduction pursuant to § 3E1.1 may apply in extraordinary cases.

5. As noted by the Government, this case presents such an extraordinary case. Defendant has pleaded guilty within the deadline to do so, and he has otherwise taken action in this case, as noted by the Government's sentencing memorandum at p. 7 and PSR ¶¶ 5, 7, 20, and 21, which indicates acceptance of responsibility and the extraordinary nature of this case. *See, e.g.*, *U.S. v. Sorenson*, 233 F.Supp.3d 690, 695–96 (S.D. Iowa 2017) (noting additional circumstances and finding obstruction and acceptance of responsibility should both apply); *see also generally U.S. v. Honken*, 184 F.3d 961, 968–69 (8th Cir. 1999) (totality of the circumstances determination). Defendant has not falsely denied any facts or relevant conduct, and Defendant has not frivolously contested the issues at sentencing. On the whole, Defendant agrees with the Government the *Honken* factors weigh in favor of application of both obstruction and acceptance of responsibility.

### B. WITNESSES AND EXHIBITS

6. Defendant does not anticipate calling any witnesses.

7. Filed simultaneously herewith are letters of support. Defendant does not anticipate any further exhibits.

## C. DEFENDANT'S CHARACTERISTICS AND "NEEDS" OF THE SENTENCE IMPOSED

8.  Although Defendant enjoys the luxury of a loving and supportive family, with whom he maintains a close relationship, PSR ¶¶ 34–38, he, like so many others, struggles with addiction, PSR ¶¶ 41–48. The offenses at issue here are reflective of such struggles. However, and most importantly, Defendant has a desire to deal with his addiction and is interested in receiving additional substance abuse treatment. PSR ¶ 48. Defendant respectfully suggests this is the most important consideration, as it reflects Defendant's true desire for change, despite any past mistakes he may have made, and rehabilitation. Indeed, Defendant's prior outpatient treatment was terminated, not because Defendant was unsuccessful or uncommitted to treatment and change, but because Defendant intended to *increase* his treatment to inpatient. PSR ¶¶ 46–47.

9.  Defendant has enjoyed an otherwise good life. His family is loving and supportive. PSR ¶¶ 34–38. Defendant graduated from high school, where he played baseball, football, and basketball. PSR ¶ 49. He attended some college coursework and has a history of employment. PSR ¶¶ 50, 52–54. While these considerations could be viewed as reasons Defendant should have never been in this position, to the contrary, Defendant views these considerations as evidence he can—and will—be successfully rehabilitated and never find himself again in this position. Defendant simply made a mistake, and his addiction overcame him. With additional training, treatment, and life skills, Defendant will learn from this mistake and will not fall victim to repetition. Indeed, Defendant has already expressed an interest in vocational training and substance abuse treatment. PSR ¶¶ 48, 51.

10. Defendant respectfully suggests lengthy incarceration is not necessary to promote respect for the law, to afford adequate deterrence, or to protect the public. 18 U.S.C. § 3553(a)(2)(A)–(C). Defendant will benefit from vocational training and substance abuse

- 4 -
Case 1:20-cr-00017-CJW-MAR   Document 48   Filed 02/04/21   Page 4 of 11

treatment. Additionally, Defendant's desired substance abuse treatment and training can best be provided by community-based programming. Defendant recognizes his need for substance abuse treatment, and he is desirous of the same. Obtaining vocational training, along with needed substance abuse treatment, will allow Defendant the opportunity to focus his efforts on positive life skills and contribute meaningfully to society. Rehabilitation is possible and should be a primary goal in determining an appropriate disposition. 18 U.S.C. § 3553(a)(2)(B)–(C).

### D. POLICY VARIANCE ISSUES: APPLICATION OF THE ICE METHAMPHETAMINE GUIDELIENS RESULTS IN AN UNDULY HARSH SENTENCE

11. As this Court is well aware, the Court can sentence below the Guidelines based solely upon policy disagreements with the Guidelines. *See e.g. Spears v. U.S.*, 555 U.S. 261, 263–67 (2009) (*per curiam*); *U.S. v. Kimbrough*, 552 U.S. 85, 109–110 (2007). "In Kimbrough the Supreme Court held that it is not an abuse of discretion for a district court to vary from the Guidelines based on its policy disagreement concerning the disparity between crack and powder cocaine sentences." *U.S. v. Battiest*, 553 F.3d 1132, 1137 (8th Cir. 2009). The United States Supreme Court has permitted trial courts to reject the guidelines on categorical policy grounds. Stated differently, there is no need for the sentencing court to make an individualized determination an excessive sentence is yielded in a particular case. *U.S. v. Beiermann*, 599 F.Supp. 2d 1087 (citing *Spears*, 555 U.S. at 262). Here, the sentence recommended is disproportionally driven by lab tests indicating the meth in this case qualifies as ice methamphetamine. However, reliance on the ice methamphetamine table results in an unduly harsh sentence, premised upon the Commission's flawed decision to base sentences upon the touchstone of purity. There is no empirical evidence or data to support the Commission's decision to correlate the length of a guideline sentence to the purity of methamphetamine involved in any given case. *U.S. v. Hubel*,

625 F.Supp.2d 845, 843 (2008); *See also U.S. v. Ysidro Diaz*, No. 11-CR-008221-2(JG), 2013, WL 322243 (E.D.N.Y. January 28, 2013). Therefore, a variance is warranted.

12. Here, application of the methamphetamine mixture guidelines, and not any ice methamphetamine guidelines, results in a 2-level reduction to the applicable advisory Guideline range. As calculated, Defendant's base offense level is 30 and resulting Guideline range is 135–168; if calculated using the mixture guidelines only, the base offense level would be 28 with an advisory Guideline range of 108–135. In other words, using the actual/ice calculation,[2] as opposed to the mixture calculation, <u>alone</u> adds between 27 and 33 months—over two years—to Defendant's sentence. The addition of several years to Defendant's punishment is neither warranted by the misconduct in this case nor by comparison to similar offenders.

A. *History of Methamphetamine Guidelines*

13. Initially, the Sentencing Guidelines treated one gram of meth as the equivalent of two grams of cocaine or 0.4 grams of heroin. *See* United States Sentencing Commission, *Methamphetamine Final Report 1999*, pages 7–13, available at https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=1&ved=0ahUKEwizjsOClPzRAhUMlJQKHQvhBVgQFggaMAA&url=http%3A%2F%2Fwww.ussc.gov%2Fsites%2Fdefault%2Ffiles%2Fpdf%2Fresearch%2Fworking-group-reports%2Fdrugs%2F199911_Meth_Report.pdf&usg=AFQjCNGpVaVBJLQwCHqZ-cU9UL0q2SH8Fg&sig2=jONc1u_IQaW31H09K5ud-w&bvm=bv.146094739,d.cGw&cad=rja. In theory, this was a value judgment one gram of meth was twice as dangerous as cocaine, but only 4/10 as harmful as the same weight of heroin. Over years of persistent upward directives,

---

[2] Because the USSG treat ice methamphetamine and actual methamphetamine proportionally, both in quantity and as equivalents to other substances, the terms here are used interchangeably.

meth punishments increased 5,000% relative to these other serious drugs.³ One gram of meth (actual) is now considered the equivalent of 100 grams of cocaine or 20 grams of heroin. *See* USSG § 2D1.1 App. Note 8(D)—Equivalency table. However, studies show heroin and cocaine users are 400% and 160%, respectively, more likely to require an emergency room visit than comparable methamphetamine users. Dr. Paul Hofer, *Ranking Drug Harms for Sentencing Policy*, Johns Hopkins Department of Psychological and Brain Sciences (May 2015), page 15, available online at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2612654. Nevertheless, these ratios remain in effect. This upward trend in methamphetamine punishments is based upon two flawed justifications.

B. *Meth Actual is Not More Dangerous than Meth Mixture*

14. First, in the late 1980's, Congress formed a mistaken belief crystalline drugs, such as crack and meth (actual), are much more addictive and dangerous than the chemically-identical powder forms. United States Sentencing Commission, *Methamphetamine Final Report 1999*, pages 7–13, available at https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=1&ved=0ahUKEwizjsOClPzRAhUMlJQKHQvhBVgQFggaMAA&url=http%3A%2F%2Fwww.ussc.gov%2Fsites%2Fdefault%2Ffiles%2Fpdf%2Fresearch%2Fworking-group-reports%2Fdrugs%2F199911_Meth_Report.pdf&usg=AFQjCNGpVaVBJLQwCHqZ-cU9UL0q2SH8Fg&sig2=jONc1u_IQaW31H09K5ud-w&bvm=bv.146094739,d.cGw&cad=rja. This belief meth (actual) is worse than meth (mixture) was determined to be incorrect. By 1999, the Sentencing Commission had already determined and reported to Congress:

---

³ Calculated as: (1 gram meth/2 grams cocaine)/(1 gram meth/100 grams cocaine)=50*100=5,000% and (1 gram meth/0.4 grams heroin)/(1 gram meth/20 grams heroin)=50*100=5,000%

- 7 -
Case 1:20-cr-00017-CJW-MAR   Document 48   Filed 02/04/21   Page 7 of 11

"Methamphetamine-mix and Methamphetamine-actual are not readily distinguishable, requiring a laboratory analysis to determine the purity of the drug," *id.* at 15, and "Methamphetamine-Actual and –mix are not different forms of substance but rather are alternative methods of measuring the severity of the offense…." *Id.* at 14, fn. 40.

15. Indeed, although meth in either form is chemically identical, mixing agents are not. Use of meth (actual) is actually *significantly less dangerous* than use of meth (mixture).[4] Approximately ten years ago, the United States and Mexico both greatly restricted the sale of pseudoephedrine, resulting in a shift from home-made meth to laboratory-made meth. Combat Methamphetamine Epidemic Act of 2005, Pub. L. No. 109-177, tit. VII, 120 Stat. 256 (2006); James J. Cunningham et al., *Mexico's Precursor Chemical Controls: Emergence of Less Potent Types of Methamphetamine in the United States*, 129 Drug & Alcohol Dependence 125, 126 (2013); Nat'l Drug Intelligence Ctr., U.S. Dep't of Justice, Publ'n No. 2010-Q0317- 001, *National Drug Threat Assessment* (2011), *available at* http://www.justice.gov/archive/ndic/pubs44/44849/44849p.pdf. As the availability of home-made methamphetamine fell, the average purity of methamphetamine nationwide rose from about 30% in 1999 to 93% by June 2012. United States Sentencing Commission, *Methamphetamine Final Report 1999*, fn. 33, available at https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=1&ved=0ahUKEwizjsOClPzRAhUMlJQKHQvhBVgQFggaMAA&url=http%3A%2F%2Fwww.ussc.gov%2Fsites%2Fdefault%2Ffiles%2Fpdf%2Fresearch%2Fworking-group-reports%2Fdrugs%2F199911_Meth_Report.pdf&usg=AFQjCNGpVaVBJLQwCHqZ-

---

[4] Of course, Defendant does not suggest the use of methamphetamine is healthy. However, as is shown, it is a fallacy to conclude meth (actual) is more dangerous than meth (mixture).

[cU9UL0q2SH8Fg&sig2=jONc1u_IQaW31H09K5ud-w&bvm=bv.146094739,d.cGw&cad=rja](#)

(1999 statistics). This change toward cleaner and more pure meth meant users experienced *fewer* harmful effects of drug use. A Department of Justice study found as purity levels rose, methamphetamine related emergency department visits over a sample three year time frame dropped 41.5% and methamphetamine related in-patient treatment admissions dropped 29.9%. Nat'l Drug Intelligence Ctr., U.S. Dep't of Justice, Publ'n No. 2010-Q0317-001, *National Drug Threat Assessment* (2011), *available at* http://www.justice.gov/archive/ndic/pubs44/44849/44849p.pdf.

16. There is no question methamphetamine is a damaging and harmful drug to those who are addicted to it and to society at large. Nothing about this argument is intended to minimize this fact. But is it justifiable to treat methamphetamine so much more severely than other types of hard drugs? Is it justified particularly when the more likely source of the persistent increases to sentences for methamphetamine is largely political pressures rather than substantive rationale?

*C. Possession of Highly Pure Methamphetamine Does Not Indicate a Prominent Role*

17. Second, Congress erroneously assumed "a defendant [who] is in possession of unusually pure narcotics may indicate a prominent role in the criminal enterprise and proximity to the source of the drugs." USSG §2D1.1 cmt. n.27(c). This assumption also required a second assumption each successive layer of middle man would dilute the meth in order to increase the quantity for resale, resulting in increasingly diluted drugs as the drugs journeyed to the eventual end user. This has never been shown to be correct. Indeed, as noted above, across the United States and across all levels, seized methamphetamine averages 93% purity. This means the average meth bought by a user on the streets incorrectly paints her as a presumptive kingpin.

18. Furthermore, as purity climbed, price plummeted 377% between October 2007 and June 2012, from $306.49 per gram to only $81.28 per gram. DEA Intelligence Division Report chart at p. 16, available at https://www.drugabuse.gov/sites/default/files/files/cewg_january_2013_vol1_508.pdf. When the average purity of methamphetamine is 93%, and all meth over 80% purity is considered "actual," focusing on meth purity fails to distinguish culpability among drug distributors.

19. Because reliance on the meth (actual) table results in an unduly harsh sentence and is not supported by empirical data, a variance is warranted. In 2013, the Honorable Mark W. Bennett, District Judge for the Northern District of Iowa wrote an exhaustive opinion tracing the history of the methamphetamine guidelines and outlining his rationales for having a policy disagreement with the ice methamphetamine guidelines. *See U.S. v. Hayes*, 948 F.Supp.2d 1009 (N.D. Iowa 2013). Judge Bennett has not been alone on this issue. *See, e.g.*, *U.S. v. Santillanes*, No. 07-619 (D.N.M. Sept 19, 2009), available on PACER at https://ecf.mmd.uscourt.gov/doc1/12111917143. Defendant respectfully requests the Court vary downward from the advisory USSG range to reflect a policy disagreement, or because application of the USSG results in an unduly harsh sentence, with the use of ice methamphetamine calculations. Defendant respectfully requests he be granted a variance based upon policy disagreement, as stated in *U.S. v. Harry*, 313 F. Supp. 3d 969 (N.D. Iowa June 6, 2018) and *U.S. v. Nawanna*, 2018 WL 2021350 (N.D. Iowa May 1, 2018), and based upon the need to avoid unwarranted sentencing disparities.

### E. CONCLUSION

WHEREFORE Defendant respectfully requests he be sentenced in accordance with the foregoing.

Respectfully submitted,

*/s/ Andrea D. Jaeger*
Andrea D. Jaeger
Keegan, Tindal, and Jaeger
2322 E. Kimberly Rd., Ste. 140S
Davenport, IA 52807
Telephone: (319) 887-6900/563-355-6060
Facsimile: (319) 688-2754
Email: andrea@keeganlegal.com

Eric D. Tindal
Keegan, Tindal, and Jaeger
103 East College Street, Suite 312
Iowa City, IA 52240
Telephone: (319) 887-6900
Facsimile: (319) 688-2754
Email: eric@keeganlegal.com

**ATTORNEYS FOR DEFENDANT**

Certificate of Service

The undersigned certifies that the foregoing instrument was electronically filed on February 4, 2021, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to the above cause and to each of the attorneys of record herein at their respective addresses disclosed on the pleadings.

*/s/ Andrea D. Jaeger*